UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMAYRA G.,[1]

    **Plaintiff,**

v.

FRANK BISIGNANO,[2]
**Commissioner of Social Security,**

    **Defendant.**

Case No. 2:23-cv-3737
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Jamayra G. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.      PROCEDURAL HISTORY

Plaintiff filed her application for benefits on January 29, 2020. R. 63, 71, 198–207. The application was denied initially and upon reconsideration. R. 81–84, 86–87. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 108–21. ALJ Hilton Miller held a hearing on December 12, 2021,[3] at which Plaintiff, who was represented by counsel, testified, as did medical and vocational experts. R. 36–62. In a decision dated March 15, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 29, 2020, the application date, through the date of that decision. R. 10–20. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 9, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 16, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[4] On April 1, 2024, the case was reassigned to the undersigned. ECF No. 11. The matter is ripe for disposition.

II.     LEGAL STANDARD

   A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3] The ALJ also held a hearing on September 22, 2021, but that hearing was adjourned after the ALJ granted Plaintiff's counsel's request for a psychological consultative examination. R. 30–35.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

3

social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 28 years old on January 29, 2020, the date on which her application was filed. R. 19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 12.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, unspecified bipolar disorder, generalized anxiety disorder, schizoaffective disorder, and specific learning disorder. The ALJ also found that Plaintiff's leg pain and back pain were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 12–14.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional non-exertional limitations. R. 14–19. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a home attendant and cashier. R. 19.

At step five and relying on the testimony of the vocational expert, the ALJ found that a

significant number of jobs—*e.g.*, jobs as an industrial cleaner, a stores laborer, and a laundry worker II—existed in the national economy and could be performed by Plaintiff with this RFC. R. 19–20. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 29, 2020, the date of the application, through the date of the decision. R. 20.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 5; *Plaintiff's Reply Brief*, ECF No. 9. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 8.

## IV.   SUMMARY OF RELEVANT EVIDENCE

### A.   Plaintiff's testimony at the administrative hearing

In response to the ALJ's questioning at the December 12, 2021, administrative hearing, Plaintiff explained why she cannot work:

> A *I won't be able to function with people*. Like I can't really understand certain things. Like when it comes to math, I'm very bad at math. I'm bad at understanding. Even if you explain it to me and you show it to me, I still won't function and do the same -- do the proper job that you're telling me to do. I easily will forget it.

R. 50 (emphasis added). Upon further inquiry by the ALJ, Plaintiff explained her difficulty functioning around people:

> Q And when you say you can't function with people, what sort of hurdles do you have in that area?
>
> A I don't -- I sort of -- *when I'm with -- around a lot of people*, like especially with important people, like the big people like for a job or like doctors or anything like

8

> that, *I get like very nervous and anxious. My heart starts beating fast. I can't really talk to them or if they're talking to me, I won't really understand what they're really saying to me like if they use big words. I will just be listening to them, but I really don't understand nothing they're saying to me.* I'm just listening.

R. 51–52 (emphasis added).

### B.    David Peterson, M.D.

David Peterson, M.D., testified as a medical expert at the December 12, 2021, administrative hearing. R. 43–50. The ALJ asked Dr. Peterson about Plaintiff's functional limitations:

> Q   Thank you. And would you expect any work-related functional limitations?
>
> A   Based upon what I reviewed, I would be in agreement with the review that was conducted in [Exhibit] 4A that there wouldn't be any limitations for simple, repetitive tasks. Based upon intermittent reports of depression and anxiety, would recommend at this point no public contact. Only occasional contact with coworkers, and supervisors, *and with the preference to not interact with groups of people*. Work that focuses on working with things as opposed to people may be most complimentary [sic].

R. 47–48 (emphasis added). The ALJ found Dr. Peterson's opinion persuasive, reasoning as follows:

> Dr. David Peterson, an impartial medical expert, testified that the claimant has medically determinable impairments of unspecified bipolar disorder, major depressive disorder, and generalized anxiety disorder. He opined that the claimant's impairments do not meet or equal a listing. He opined that the claimant has no limitations in understanding, remembering, or applying information; moderate limitations interacting with others; no limitations in concentration, persistence, and maintaining pace; and moderate limitations in adapting and managing oneself. *He further opined that the claimant would be able to perform simple, repetitive tasks, but with no public contact, only occasional contact with coworkers and supervisors, with a preference to not interact with groups of people. The undersigned finds Dr. Peterson's testimony and opinion persuasive* because it is well-supported by the medical records and by thorough explanation of the basis for his opinion. Furthermore, it is largely consistent with the other opinions. However, *the undersigned has assessed more restrictive limitations in the residual functional capacity to accord the benefit of every doubt to the claimant's subjective allegations.*

9

R. 17–18 (emphasis added).

**V.     DISCUSSION**

Plaintiff challenges, *inter alia*, the ALJ's RFC determination and argues that, although the ALJ found Dr. Peterson's opinion to be persuasive, the ALJ's RFC does not include all of that expert's opined limitations. *Plaintiff's Brief*, ECF No. 5, pp. 33–35; *Plaintiff's Reply Brief*, ECF No. 9, p. 12. For the reasons that follow, this challenge is well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, an ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a

reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

At step four of the evaluation process in this case, the ALJ found that Plaintiff had the RFC to perform a limited range of medium exertional work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except nonexertional limitations allowing the performance of simple, routine, and repetitive tasks that can be explained; specifically (svp 1-2) which involve making simple decisions, and only occasional changes in routine, no work with the public; and involves only occasional contact with coworkers and supervisors.

R. 14.

Plaintiff complains that, although the ALJ accepted Dr. Peterson's opined social interaction limitations, the ALJ nevertheless failed to incorporate into the RFC the social limitation of not interacting with groups of people. *Plaintiff's Brief*, ECF No. 5, pp. 33–35; *Plaintiff's Reply Brief*, ECF No. 9, p. 12. Plaintiff also points to the ALJ's statement that he "has assessed more restrictive limitations in the residual functional capacity" than were opined by Dr. Peterson, R. 18, but

11

the ALJ inexplicably failed to include one of those opined restrictions in the RFC. *Id*. For his part, the Commissioner notes that Dr. Peterson expressed the limitation of not working with groups of people as only a "preference" and not as an inability to work with such groups. *Defendant's Brief*, ECF No. 8, p. 23. In any event, the Commissioner contends, the ALJ "greatly restricted Plaintiff's interactions with others" by eliminating contact with the public and only occasional contact with supervisors and coworkers. *Id*. According to the Commissioner, these restrictions "adequately accommodated Dr. Peterson's opinion that Plaintiff would have a 'preference' not to interact with groups of people. . . ." *Id*. (citing 20 C.F.R. § 416.945(a)). The Commissioner's arguments are not well taken.

As set forth above, the ALJ expressly found Dr. Peterson's opinion persuasive and specifically stated that he (the ALJ) "has assessed *more restrictive limitations*" in the RFC to "accord the benefit of every doubt to the claimant's subjective allegations." R. 18 (emphasis added). Ultimately, however, the ALJ did not include one of Dr. Peterson's opined limitations, *i.e.*, a preference to not interact with groups, in the RFC. R. 14. Rather than assessing more restrictive limitations, the ALJ actually crafted an RFC that is less restrictive than that opined by Dr. Peterson and the ALJ did not, in fact, "accord the benefit of every doubt" to Plaintiff's subjective hearing testimony that she becomes nervous and anxious around groups of people and cannot understand what they are saying to her. R. 14–15, 18, 51–52. Notably, the ALJ never explained this omission. R. 14–19.

Although an ALJ is free to consider the medical opinions in the record and a claimant's subjective complaints, and to determine whether and to what extent those opinions and complaints are to be credited, an ALJ must in all events explain his reasoning in that regard. *Cotter*, 642 F.2d at 704–05; *Fargnoli,* 247 F.3d at 42; *Morales*, 225 F.3d at 317; *see also Jones,*

12

364 F.3d at 505 (providing that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"). In this case, the ALJ stated that he accepted the social restrictions articulated by Dr. Peterson, but then ultimately excluded, without explanation, the restriction of working with groups of people from the RFC. Although the Commissioner appears to suggest that Dr. Peterson's use of the term of "preference" means that this limitation has no legal significance, the Court rejects that suggestion, at least in the absence of some explanation by the ALJ.

Under the circumstances presented in this case, this Court cannot conclude that substantial evidence supports the ALJ's RFC determination. *See Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). This Court therefore concludes that remand of the matter for further consideration of Dr. Peterson's opinion and the RFC determination is warranted.[5] Moreover, remand is appropriate even if, upon further examination these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay

---

[5] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Peterson's opinion and the RFC determination, the Court does not consider those assertions.

13

speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 26, 2025                              *s/Norah McCann King*
                                                      NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE